**SEALED**

2023R00306/MPP/JLW

_____ FILED    _____ ENTERED
_____ LOGGED   _____ RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NOV 0 2 2023

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL NO.** BY _____ 03 DEPUTY |
| **v.** | RDB 23cr 391 |
| | (False Statements Relating to Health Care Matters, 18 U.S.C. § 1035; Aggravated Identity Theft, 18 U.S.C. § 1028A; Forfeiture, 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853(p) 28 U.S.C. § 2461(c)) |
| **THOMASINA E. AMPONSAH,** | |
| **Defendant.** | |
| | **UNDER SEAL** |

### INDICTMENT

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

### COUNTS ONE AND TWO
### (False Statements Relating to Health Care Matters)

1.  Defendant **THOMASINA E. AMPONSAH** ("**AMPONSAH**") was a resident of Baltimore County, Maryland.

2.  Nursing Facility 1 was a skilled nursing facility located in Ellicott City, Maryland that provided, among other services, health care services covered by Medicare and Medicaid.

3.  Staffing Agency 1 was a nursing staffing agency that placed nurses in various medical facilities, including at facilities in Maryland, that provided health care services covered by Medicare and Medicaid.

4.  Identity Victim T.R.S. was a licensed nursing professional who provided nursing services in Maryland and North Carolina.

5.  Identity Victim E.A. was a licensed nursing professional who resided in and provided nursing services in Florida.

1

2023R00306/MPP/JLW

## **Nursing Background**

6.      In the United States, each state has its own laws, rules, and regulations governing nursing care. Typically, each state's board of nursing governs the rulemaking and administration of those rules within a state.  In Maryland, that entity is the Maryland Board of Nursing.

7.      In some states, the term "nurse" can only be used in conjunction with the practice of a registered nurse ("RN"), or a licensed practical nurse ("LPN"). RNs provide direct care to patients, while LPNs typically provide assistance to doctors or RNs. RNs take on a management role and are responsible for overseeing LPNs and other healthcare aides.

8.      After becoming registered or licensed, RNs and LPNs are issued nursing license numbers by the state in which they were licensed.

9.      According to the National Council of State Boards of Nursing, there are three general requirements to become a nurse:  1) verification of graduation from an approved pre-licensure LPN or RN nursing program; 2) verification of successful completion of the National Council Licensure Examination ("NCLEX"), often referred to as "the boards," and 3) any additional requirements imposed by the state.

10.      The Nursing Licensure Compact ("NLC") was a multistate agreement that allowed nurses to practice with patients across state lines.  Thirty-four states have enacted NLC legislation, including Maryland, Virginia, and Florida. Therefore, an individual could receive their nursing license in Virginia or Florida and work in Maryland.

2023R00306/MPP/JLW

## **Health Care Benefit Programs**

11.     Medicare was a federally funded health care program providing benefits to individuals aged 65 and older, and to certain disabled persons. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health and Human Services.

12.     To receive Medicare reimbursement for covered services, the provider was required to submit a claim to Medicare (through a contractor known as the Medicare Administrative Contractor), either electronically or in writing.  The claim must include information identifying the provider, the ordering physician, the patient, and the services rendered.  By submitting the claim, the provider certifies (among other things) that the services were rendered to the patient and were medically necessary.

13.     Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

14.     Medicaid was a Federally assisted grant program for the states.  Medicaid enabled the states to provide medical assistance and related services to needy individuals.   CMS administered Medicaid on a Federal level.  Within broad Federal rules, however, each state decided who was eligible for Medicaid, the services covered, payment levels for services, and administrative and operation procedures.  The state directly paid the providers of Medicaid services, with the state obtaining the Federal share of the payment from the accounts drawn on funds of the United States Treasury.

15.     Providers enrolled with the Maryland Medicaid Program, agreed to submit claims for only medically and reasonable necessary services that are covered under the program, for medical assistance services actually provided, and to seek compensation to which the provider is legally entitled.

3

2023R00306/MPP/JLW

16.     Maryland Medicaid was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

### Additional Background

17.     **AMPONSAH** never obtained a nursing degree.

18.     **AMPONSAH** did not pass the NCLEX.

19.     **AMPONSAH** was not qualified or licensed to practice as an LPN or RN.

20.     **AMPONSAH** did not have any clinical experience as an LPN or RN.

21.     Through the false statements described herein, **AMPONSAH** was able to work at Nursing Facility 1, and at several other health care facilities through Staffing Agency 1, which caused these facilities to bill health care benefit programs, including Medicare and Medicaid, for alleged licensed nursing services provided by **AMPONSAH**.

22.     Through the false statements described herein, **AMPONSAH** placed patients at risk by engaging in the profession of nursing, to include purporting to deliver medical treatment, services, medications, and items to patients when **AMPONSAH** lacked the formal education, training, credentials, and lawful authority to do so.

### The Charges

23.     On or about the dates set forth below, in the District of Maryland, the defendant,

**THOMASINA E. AMPONSAH,**

knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, that she was not a licensed nurse, in connection with the delivery of and payment for health care benefits, items, and services involving Medicare and Medicaid, which are health care benefit programs as defined in 18 U.S.C. 24(b):

2023R00306/MPP/JLW

| Count | Date of Application | Description of False Statement |
|-------|--------------------|-------------------------------|
| 1 | August 21, 2019 | When applying for employment at Nursing Facility 1, **AMPONSAH**: (1) used the nursing license number of Identity Victim T.R.S.; (2) misrepresented her educational background; and (3) misrepresented her professional background. |
| 2 | July 18, 2021 | When applying for employment with Staffing Agency 1, **AMPONSAH**: (1) used the nursing license number of Identity Victim E.A.; (2) misrepresented her educational background; and (3) misrepresented her professional background. |

18 U.S.C. § 1035

2023R00306/MPP/JLW

## COUNTS THREE AND FOUR
### (Aggravated Identity Theft)

        1.      Paragraphs 1 through 22 of Counts One and Two are re-alleged and incorporated by reference as if fully set forth herein.

        2.      On or about the dates set forth below, in the District of Maryland, the defendant,

### THOMASINA E. AMPONSAH,

during and in relation to a felony violation of Title 18, United States Code, Section 1035, False Statements Relating to Health Care Matters, did knowingly transfer, possess, or use, without lawful authority, means of identification of another person, knowing said means of identification belonged to another actual person:

| Count | Date of Unlawful Use | Description of Unlawful Use |
|---|---|---|
| 3 | August 21, 2019 | When applying for employment at Nursing Facility 1, **AMPONSAH** unlawfully used the name and nursing license of another actual person, Identity Victim T.R.S. |
| 4 | July 18, 2021 | When applying for employment with Staffing Agency 1, **AMPONSAH** unlawfully used the name and nursing license of another actual person, Identity Victim E.A. |

18 U.S.C. § 1028A

2023R00306/MPP/JLW

## **FORFEITURE ALLEGATION**

1.      Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(7), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of a defendant's conviction under any of the offenses charged in Counts One and Two of this Indictment.

2.      Upon conviction of any of the offenses alleged in Counts One and Two this Indictment, the defendant,

### **THOMASINA E. AMPONSAH**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

### **Substitute Assets**

3.      If, as a result of any act or omission of the defendants, any of the property described above as being subject to forfeiture:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or,

e.      has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c)

18 U.S.C. § 982(a)(7)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

2023R00306/MPP/JLW

Erek L. Barron /mpp

Erek L. Barron
United States Attorney

SIGNATURE REDACTED

Foreperson

11/2/2023

Date